545 A.2d 1321

**Edward J. MUHL, Insurance Commissioner of the State of Maryland et al.**

v.

**Michael O. MAGAN.**

**No. 153, Sept. Term, 1987.**

Court of Appeals of Maryland.

Aug. 29, 1988.

464

David M. Funk (Bryan D. Bolton, Shapiro and Olander, all on brief), Baltimore, Kathleen M. Sweeney, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellants.

George A. Nilson, John A. Singer, Piper & Marbury, Baltimore, Ronald S. Gass, Washington, D.C., amicus curiae for American Ins. Ass'n.

Edward J. Birrane, Jr. (Steven Scott Stephens and Birrane, Harlan & Sharretts, all on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE, and BLACKWELL, JJ., and MARVIN H. SMITH, Associate Judge of the

Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

In this administrative appeal from the Insurance Division, involving statutory regulation of medical malpractice underwriting, a combination of circumstances has allowed the case to progress to this Court without the Division ever having expressed a considered evaluation of the merits. Due regard for the administrative process requires that the matter be remanded to the Division for the application of its expertise.

I

It will be helpful to a consideration of the facts of this case, set forth in part II, *infra*, if we first review certain aspects of the regulatory scheme of the Insurance Code, Md.Code (1957, 1986 Repl.Vol.), Art. 48A.[1] The Insurance Code is basically the product of a comprehensive revision enacted by Ch. 553 of the Acts of 1963. Subtitle 15 of the Insurance Code, §§ 212 through 240H, addresses unfair trade practices. Section 213 prohibits engaging in unfair trade practices either as defined in, or determined pursuant to, Subtitle 15. With respect to unfair trade practices defined in Subtitle 15, the Commissioner is authorized to issue a cease and desist order against the violator upon a finding of violation after a hearing on notice, including notice of the charges. § 215(a). With respect to undefined unfair trade practices the Commissioner is authorized by § 216 to conduct a hearing, after notice, including notice of charges, and upon finding of a violation which is not discontinued, to cause the Attorney General to seek an injunction.

One of the unfair trade practices addressed in Subtitle 15 is unfairness or discrimination in underwriting. Section

---

1. Unless otherwise noted, all statutory references herein are to Art. 48A of the above-cited Code.

234A(a), containing the particular provisions invoked here, provides in relevant part as follows:

> No insurer ... shall ... refuse to underwrite ... a particular insurance risk ... for any reason based in whole or in part upon race, color, creed, sex, or blindness of an applicant or policyholder or for any arbitrary, capricious, or unfairly discriminatory reason. ... No insurer ... may ... refuse to underwrite ... a particular insurance risk ... except by the application of standards which are reasonably related to the insurer's economic and business purposes. At any hearing to determine whether there has been a violation of this section, the burden of persuasion shall be upon the insurer to demonstrate that the ... refusal to underwrite ... is justified under the standards so demonstrated.

"If the Commissioner in a specific instance shall make a finding that an insurer has violated § 234A ... he may, in addition to the exercise of any power granted elsewhere in [Art. 48A], order the insurer to accept the risk...." § 234C.

Consequently, should the Commissioner determine to charge an insurer with violating § 234A, the insurer would have a right to notice of the charges, to notice of a hearing and to a hearing before the Commissioner. In addition, under § 234C any party involved in hearings and proceedings conducted under § 234A may appeal the Commissioner's decision.

When the Insurance Division receives a complaint that an insurer has engaged in conduct potentially constituting an unfair trade practice, it has not been the administrative practice of the Division to issue formal charges based solely upon the complaint. Rather, the Division conducts an informal, preliminary inquiry. At the time of the events with which we are concerned here, the administrative practice was set forth in an August 16, 1985, notice of proposed rule making. *See* 12 Md.Reg. 1708. The proposed rules, with changes only in style, became effective May 19, 1986, and are codified as Ch. 67, "Preliminary Hearing Regulations,"

of Subtitle 30, Title 09 of the Code of Maryland Regulations (Regs.).

The Preliminary Hearing Regulations interpret and apply, *inter alia*, § 35(2) which, together with § 35(3), is integral to the case at hand. Section 35 in its entirety reads:

(1) The Commissioner may hold hearings for any purpose within the scope of this article deemed by him to be necessary.

(2) The Commissioner shall hold a hearing if required by any provision, or upon written demand therefor by a person aggrieved by any act, threatened act or failure of the Commissioner to act, or by any report, rule, regulation or order of the Commissioner (other than an order for the holding of a hearing, or an order on hearing or pursuant thereto). Any such demand shall specify the grounds to be relied upon as a basis for the relief to be demanded at the hearing, and unless postponed by mutual consent, such hearing shall be held within thirty (30) consecutive calendar days after receipt by the Commissioner of demand therefor.

(3) If within such thirty (30) day period the Commissioner does not either (i) grant the hearing, or (ii) issue his order refusing the hearing, as to such previous report, rule, regulation, or order as to which such person so claims to be aggrieved, then the hearing shall thereby be deemed to have been refused.

The purpose of the Preliminary Hearing Regulations is "to establish procedures governing hearings held by the Insurance Commissioner and requested by persons before charges being issued." Regs. 09.30.67.01. A person who complains that another has violated the Insurance Code and who desires a hearing on that complaint must request the hearing within thirty days of "having been notified of the Commissioner's action, intention to act, or failure to act." Regs. 09.30.67.04B. The general rule is that the "Commissioner shall grant a hearing unless" (1) the Commissioner has no authority to take action; or the request (2) is frivolous or made in bad faith; (3) does not contain required

information; (4) is untimely; or (5) is moot. Regs. 09.30.-67.04C. The issue at a preliminary hearing is whether "there is reasonable cause to believe that a person has violated the Insurance Code[.]" Regs. 09.30.67.06A(1). If the hearing officer concludes that there is reasonable cause to believe that a person has violated the Insurance Code, the hearing officer reports the findings and conclusions in writing to the Commissioner. *Id.* If the Commissioner "[a]ccepts the report of the hearing officer, he may issue an administrative charging document alleging that a licensee has violated the Insurance Code[.]" Regs. 09.30.67.-06A(1)(a)(i). If the hearing officer finds there is no reasonable cause to believe a person is in violation, "the hearing officer shall order [that] the matter be dismissed." Regs. 09.30.67.06A(1)(b).[2]

Appeals from the Commissioner, other than those governed by § 242B (dealing principally with rates), are governed by § 40. Of significance here is that § 40(1) authorizes an appeal "with respect to a matter [as to] which the Commissioner has refused a hearing." Under § 40(4) the hearing on § 40 appeals is "de novo." [3]

---

**2.** Presumably the Commissioner has concluded that the preliminary hearing system operates more practically than a complaint system in which the only hearings are those on formal charges. In addition to the attrition in complaints due to complainants who do not request a preliminary hearing and those whose requests for hearings are expressly denied, we suspect that there are cases in which insurers, when faced with a finding of reasonable cause to believe they committed violations, acquiesce in relief which could only be compelled after a formal finding of violation on charges.

**3.** The relevant provisions of § 40 read as follows:

(1) ... An appeal from the Commissioner shall be taken only from an order or hearing or with respect to a matter [as to] which the Commissioner has refused a hearing. Any person ... whose pecuniary interests are directly and immediately affected by any such ... refusal and who is aggrieved thereby may, within 30 days after ... the Commissioner's refusal to grant a hearing, appeal from ... such refusal of a hearing.

....

(3) *Record on appeal.*—Within twenty (20) days after filing of the copy of the notice of appeal in his office, the Commissioner shall

## II

Respondent, Dr. Michael O. Magan (Dr. Magan), is an obstetrician/gynecologist who is licensed in the State of Maryland and who, prior to the events hereinafter described, was privileged to practice both specialties in a number of metropolitan Baltimore area hospitals. Prior to August 1, 1984, Dr. Magan obtained his malpractice insurance from Medical Mutual Liability Insurance Society of Maryland (Medical Mutual), one of the respondents. From August 1, 1984, to July 31, 1985, Dr. Magan was insured by another company under a policy issued through the American College of Obstetricians and Gynecologists. Dr. Magan applied to Medical Mutual for a claims-made policy commencing August 1, 1985, after he learned that his insurer would cease writing malpractice coverage.

Medical Mutual's underwriting department declined to cover, citing three claims against Dr. Magan based on occurrences in 1979 and 1980. In mid-August Dr. Magan met with the board of directors of Medical Mutual to have

make and return to the court in which the appeal is pending a copy of his order appealed from and a full and complete transcript, duly certified by the Commissioner, of the record upon which the order was issued, together with all exhibits and documentary evidence introduced thereat. If the appeal is from an action of the Commissioner with respect to which a hearing was refused, the Commissioner shall within such twenty (20) day period make and return to the court a full and complete transcript, duly certified by him, of all documents on file in his office directly relating to the matter as to which such appeal is taken.

(4) *Hearing de novo.*—Upon receipt of such transcripts and evidence the court shall hear the matter de novo as soon as reasonably possible thereafter. Upon the hearing of the appeal the court shall consider the evidence contained in the transcript, exhibits, and documents therein filed by the Commissioner, together with such additional evidence as may be offered by any party to the appeal.

(5) *Judgment.*—The court may affirm the decision of the Commissioner or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

. . . .

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court[.]

the underwriting decision reviewed. As a result of that meeting Medical Mutual continued to refuse to write obstetrical coverage for Dr. Magan but did offer to cover for surgery-gynecology at a 100% surcharge for the first policy year.

Dr. Magan thereupon engaged counsel through whom Dr. Magan, by letter of September 11, 1985, complained to the Insurance Commissioner alleging that Medical Mutual had violated § 234A. Dr. Magan also demanded a hearing "[i]n accordance with Section 35[.]" [4]

The Chief Investigator of the Property and Casualty Section of the Division transmitted Dr. Magan's complaint to Medical Mutual for response.[5] By letter of October 18, 1985, Medical Mutual responded that the basic reason for its refusal to underwrite was Dr. Magan's "extremely adverse claims history." The insurer pointed out that one of the claims, involving an "[a]lleged failure to monitor preeclampsia resulting in infant hypoxia and retardation" had been settled on July 16, 1984, and that Medical Mutual had paid $963,538.28 indemnity, plus expenses. Another claim, involving "[a]lleged delayed interpretation of fetal monitoring strip resulting in [a] crash caesarean section and infant death" was on appeal following a favorable health claims arbitration panel ruling. Medical Mutual had a six figure

---

4. The September 11 demand for a hearing could only have been addressed to the discretionary power of the Commissioner under § 35(1) inasmuch as, at that time, no statute required any hearing and Dr. Magan was not aggrieved by any act or failure to act of the Commissioner.

5. On October 10 the Chief Investigator received a hand delivered letter from Dr. Magan referring to the September 11 complaint and stating that "30 days will run out on October 11, 1985." At this point the complaint was in the same posture as on September 11, namely, any request for hearing was an application to the discretionary power of the Commissioner under § 35(1). Even if that request were automatically deemed denied under § 35(3) and were appealable as a refusal of a hearing under § 40(1) judicial review would have been limited to review for an abuse of the broad discretion conferred by § 35(1). Dr. Magan, however, did not appeal that refusal.

reserve on that claim and had paid expenses of $10,468.29. A third claim had been settled for $600.

Dr. Magan wrote to the Chief Investigator on October 24 taking the position that Medical Mutual's response was inadequate in that it had failed to supply the underwriting standards relied upon by it within the meaning of § 234A. On November 7 the Chief Investigator replied advising that "[i]t has been determined by this Division" that Medical Mutual was not in violation of § 234A. The letter further advised that "[i]f you disagree with our position, you have the prerogative to demand a hearing under Section 35(2)...." By letter of November 13 Dr. Magan, specifically invoking § 35(2), demanded a hearing and reasserted the position that Medical Mutual was required to demonstrate that its refusal to insure was founded on standards complying with § 234A.

The Assistant Commissioner for the Property and Casualty Section of the Division responded on November 14. He advised that by separate letter of even date he was requesting more detailed information from Medical Mutual respecting a number of items, including underwriting standards. The Assistant Commissioner further advised Dr. Magan as follows:

> After I have reviewed the correspondence from you and [Medical Mutual], I will render a decision as to whether [the Chief Investigator's] decision should be sustained in upholding Medical Mutual. If I arrive at that determination, I will then need to determine whether your request for a hearing meets the criteria set forth under § 35(2).

The criteria referred to by the Assistant Commissioner were the proposed preliminary hearing regulations. He enclosed a copy of them in his November 14 letter and advised that the Division was then operating under those guidelines.

Thereafter, on November 26 Dr. Magan transmitted certain material to the Assistant Commissioner and stated an

intent "to elaborate on it at length through oral testimony at the hearing to which we are entitled under the Statute." [6]

Dr. Magan filed his order for appeal in the Circuit Court for Baltimore City on December 30, 1985. That order referred to the "determination" of November 7, to the request for hearing of November 13 and to § 35(3) under which "[t]he request for hearing was deemed denied by operation of law ... thirty days following the request for hearing."

One day after the appeal was noted the Division received Medical Mutual's response to the Assistant Commissioner's request of November 14. That response was dated December 19.

On January 7, 1986, the Assistant Commissioner wrote to Dr. Magan and Medical Mutual, saying, "I am somewhat surprised at [the appeal] since I was of the opinion that all parties had agreed to my jurisdiction to resolve this matter before an appeal was noted[.]" He then went on to say that, had he retained jurisdiction, he would have ruled that Medical Mutual's refusal was "clearly defined and allowed under the guidelines of Medical Mutual based upon Dr. Magan's adverse loss ratio as an obstetrician and that any hearing before the Commissioner would be fruitless[.]" [7]

---

**6.** After stating that the Chief Investigator's letter of November 7 had demonstrated the Division's prejudgment of the case, Dr. Magan said: "Further, our position is that the Division's action is an 'action' of the Insurance Commissioner, which starts a 30-day statutory time-clock." We do not consider Dr. Magan to have meant that the November 7 letter constituted an appealable order of the agency, thereby triggering the running of time for appeal because Dr. Magan did not appeal within thirty days of November 7. Rather, we interpret the reference to be to an "act ... of the Commissioner" under § 35(2), as to which Dr. Magan claimed a right to a hearing per § 35(2) and as to which the thirty day period was running under § 35(3) measured from the November 13 request. Thus the record negates any implied consent to an extension of time for the Division to decide if a hearing would be granted.

**7.** The "guidelines" referred to had been submitted to the Commissioner at an earlier date as part of Medical Mutual's rate filing.

When the appeal came on for hearing in the circuit court, the Assistant Attorney General representing the Division explained that the Assistant Commissioner's gratuitous statement in the January 7, 1986, letter, concerning what the ruling would have been had there been no appeal, was made as an effort to eliminate the possibility of remand.[8]

The circuit court heard testimony from Dr. Magan, from one of Dr. Magan's colleagues who opined that "Dr. Magan is an excellent obstetrician and gynecologist," and from the underwriting and actuarial vice-presidents of Medical Mutual. At the conclusion of the hearing Dr. Magan, for the first time either in the administrative or judicial proceedings, argued that the statute creating Medical Mutual had the legal effect of compelling that insurer to cover any physician who was licensed to practice medicine in Maryland and who desired coverage from Medical Mutual. *See* §§ 548 through 556.

For the reasons stated in a fifty-one page opinion the circuit court remanded the matter to the Division for the limited purpose of its ordering Medical Mutual to issue immediately a professional liability policy to Dr. Magan "with respect to his obstetrical practice" at a rate no

---

**8.** The Assistant Attorney General told the circuit court:

I'm afraid I have to take some of the blame. I did not want to have to be in a position to come back here and have counsel argue this is a premature appeal, remand it back, at which point exactly what has happened here has happened down there. Was there adequate evidence for the decision? [The Assistant Commissioner] determined there was and we would have come back here on appeal and I realized as do all the parties there is a time problem in this particular case and that [it] was at my suggestion that we eliminate the necessity or possibility of remand in order to make sure that this case is heard once, and that is the procedural posture that we are presently in in this case.

And further:

Your Honor, it is our position at this point—I think all counsel agree a remand would be useless. I think everyone wants to try this case today to get it decided and I think regardless of the procedural posture, how we got here, I think everyone would agree that this is a Section 40 appeal and that it would be best handled in front of you today. Thank you.

greater than the current base rate. The circuit court concluded that Medical Mutual's underwriting standards as applied to Dr. Magan were "subjective." The court found that "the most important guideline," that which directed consideration to "[p]rior claim/loss history," had not been "applied scientifically or even with any type of statistical or scientific standards or even a computerized standard or any standard at all, which will allow a fair, unprejudiced, nondiscriminatory, and impartial decision making process to apply to all doctors of the same class." The circuit court also held that the Bylaws of Medical Mutual coupled with "the clear legislative intention" stated in § 548 demonstrated "the legislative intention to provide Medical Mutual as a vehicle for insurance for all physicians registered and properly practicing in the State of Maryland." [9]

The Commissioner reacted to the circuit court decision by moving to alter judgment and to have the matter remanded to the Division for a hearing because the circuit court "lacked the jurisdiction and legal authority to rule on the merits of this case before administrative remedies were exhausted." The Division further pointed out that its administrative position was never before the circuit court on the issue of "whether Medical Mutual must write malpractice insurance" for any doctor licensed in Maryland. The Division submitted that, for the circuit court to determine that issue before the administrative agency had an opportunity to consider or rule on it, would bypass administrative

---

**9.** Before making the immediately preceding ruling on the merits, the circuit court considered

the argument of the Defendants that Dr. Magan failed to notify counsel of [his] intent to argue a new issue, namely, Medical Mutual is required to insure all doctors in Maryland, including Dr. Magan, irrespective of their claim experience.

The circuit court treated this argument as one based only on prejudice to the defendants. The circuit court opined that there could be no prejudice because the merits of the argument were based principally on statutory enactments with which both the Commissioner and Medical Mutual were familiar.

expertise in violation of the exhaustion principle. The circuit court denied the post judgment motion.

On appeal by the Commissioner and by Medical Mutual, the Court of Special Appeals affirmed. *Medical Mutual Liab. Ins. Soc'y v. Magan,* 72 Md.App. 330, 529 A.2d 841 (1987). The intermediate appellate court relied heavily on considered dicta which it had included in its opinion in *Crumlish v. Insurance Comm'r,* 70 Md.App. 182, 520 A.2d 738 (1987), a decision rendered after the appeal to the circuit court was noted in the instant matter.

The *Crumlish* court had considered in the context of an attempted cancellation of an automobile liability policy the provisions of § 234A relating to "the application of standards which are reasonably related to the insurer's economic and business purposes" (the Standards Clause). The Standards Clause had been enacted by Ch. 752 of the Acts of 1974 and this Court in *Lumbermen's Mut. Casualty Co. v. Insurance Comm'r,* 302 Md. 248, 487 A.2d 271 (1985) had commented on Ch. 752, saying:

The preamble to Ch. 752 states that insurers' underwriting decisions must

"be made solely on the basis of a reasonable application to relevant facts of underwriting principles, standards and rules that can be demonstrated objectively to measure the probability of a direct and substantial adverse effect upon losses or expenses of the insurer *in light of the approved rating plan or plans of the insurer then in effect....* (Emphasis added [in *Lumbermen's*].)" [*Id.,* at 254, 487 A.2d at 274.]

*Crumlish* read this reference as an implicit adoption by this Court of the statute's preamble as the legislative history of the Standards Clause. 70 Md.App. at 190, 520 A.2d at 743. For the guidance of the Commissioner on remand, the *Crumlish* court opined that the insurer must produce facts which would answer at least three questions. *Id.,* 520 A.2d at 742–43. All three questions presupposed that the statute

could be satisfied only by an objectively demonstrable, statistical basis for underwriting.[10]

In the case before us the Court of Special Appeals, relying on *Crumlish,* said that "[t]he language of the preamble is particularly instructive because it describes a standard as something that can be 'demonstrated objectively to measure the probability of a direct and substantial adverse effect upon losses or expenses of the insurer....' " *Medical Mutual Liab. Ins. Soc'y v. Magan, supra,* 72 Md.App. at 337, 529 A.2d at 845. The court then held that Medical Mutual's guideline number 3, "prior claim/loss history," was

> not a standard within the contemplation of § 234A(a). "Claims history" is a vague term which by its very nature requires subjective interpretation. Indeed, the guidelines on their face direct that they be applied with "some subjectivity." With respect to "claims history", the underwriters are instructed by paragraph C. of the guidelines to "review" the prior claim/loss history, to "secure ... information," and to evaluate facts. They are given no objective factors, however, such as a number of claims or an amount of paid claims that would trigger certain results. [*Id.* at 340, 529 A.2d at 846–47.]

The Court of Special Appeals then quoted the three questions formulated in *Crumlish:*

> "1. What is the statistical basis for the supposition [giving rise to the standard]?
>
> 2. How valid is any such statistical evidence?
>
> 3. If there is statistical validity to the supposition, what direct and substantial adverse effect would it have upon

---

**10.** On the merits of the matter before us Medical Mutual argues that the reference in the preamble of Ch. 752 to underwriting standards that can be "demonstrated objectively" does not control the interpretation of the Standards Clause. Pointing to amendments in the course of passage which deleted from the operative body of the statute certain language which had been proposed on introduction, the insurer argues that it was a legislative, mechanical oversight to fail to delete from the preamble the language referring to that which is objectively demonstrable.

[the insurer's] losses and expenses in light of its current approved rating plan?" [*Id.* at 341, 529 A.2d at 847.] Concluding its discussion of the application of the Standards Clause, the court said:

Not only is the record before us devoid of any evidence which could answer these questions, but, given the lack of any objective supposition, we do not believe that the *Crumlish* test can even be applied in the case *sub judice.* [*Id.*]

The Court of Special Appeals "[a]ccordingly" held that the trial court's finding that § 234A had been violated was correct.

Thus, the refusal of a preliminary hearing on a complaint, as "deemed" by § 35(3), the right to appeal under § 40(1) from a refusal of a hearing, and the de novo provisions of § 40(4) procedurally produced a set of judicially promulgated, precise rules for underwriting medical malpractice liability coverage, without those rules ever having been exposed to the expertise of the agency charged under the Insurance Code with policing unfair trade practices in underwriting.

## III

■ The Commissioner argues that the circuit court erred in failing to remand this case to the Division for a hearing. We agree. The agency action giving rise to the appeal to the circuit court was the denial of a preliminary hearing on Dr. Magan's complaint. That denial came about by operation of law due to the Division's inaction for thirty days following Dr. Magan's request of November 13, after he was aggrieved by the Chief Investigator's conclusion that there had been no violation. Thus, the issue on appeal should have been confined to whether the preliminary hearing was properly denied.

■ We accept the Commissioner's interpretation of § 35(2), now formally promulgated in Regs. § 09.30.67.04C, under which there is no right to a preliminary hearing on a

complaint which suffers any of the deficiencies therein set forth. Section 234C authorizes the Commissioner to order an insurer to accept a specific risk and it cannot be said on the basis of Dr. Magan's complaint that the relief sought was beyond the power of the Commissioner to grant. The judgments of the two courts below attest that the important and difficult questions involving the interpretation of the Standards Clause and its application to medical malpractice underwriting are neither frivolous nor raised in bad faith. Here § 35(3) operated to produce an erroneous result when it automatically converted the Commissioner's inaction into a denial of a preliminary hearing.

Once the denial had been appealed, the circuit court, at the urging of all parties, considered the merits of Dr. Magan's complaint and went on to interpret the Standards Clause. The Court of Special Appeals approved of those procedures. It reasoned that the reference in § 40(1) to an appeal "with respect to a matter" as to which a hearing has been denied "encompassed the entire subject matter upon which Magan was refused a hearing and was not just an appeal from the refusal to grant a hearing." *Medical Mutual Liab. Ins. Soc'y v. Magan, supra,* 72 Md.App. at 335, 529 A.2d at 844. The court also was of the view that the reference in § 40(3) to a transmittal by the Commissioner "of all documents on file in his office directly relating to the matter" made the broad interpretation "all the more obvious." *Id.*

The references in § 40(1) and (3) to the "matter" are fully satisfied here by reviewing Dr. Magan's complaint to determine if the matter is within the Commissioner's power to remedy and if it is frivolous or made in bad faith. Moreover, the interpretation applied by the Court of Special Appeals is contrary to the interpretation of de novo review placed on § 40 shortly after it was enacted in the 1963 revision of the insurance laws. *See Nuger v. Insurance Comm'r,* 238 Md. 55, 207 A.2d 619 (1965).

■ Nuger was a broker and agent whose license had been revoked by the Commissioner after hearing on charges. Nuger's agency hearing had been conducted under the old insurance laws but his appeal in the circuit court was heard after the new (1963) law was in effect. We held that the differences between the statutes were immaterial with respect to the scope of judicial review, saying:

> As we have pointed out, the provisions in respect of the judicial review set forth in the Administrative Procedure Act are applicable in this case, whether the old law is applicable, or whether the similar provisions in the new law apply. "While it appears that the scope of judicial review by a trial court of the findings, inferences, conclusions and decisions of administrative agencies under the statute has been broadened to some extent, it is clear that the statute [the Administrative Procedure Act] did not intend that the court should substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken (Citations omitted)." *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A.2d 657 (1959), appeal dismissed 363 U.S. 419 [80 S.Ct. 1257, 4 L.Ed.2d 1515] (1960); *State Board v. Ruth*, 223 Md. 428, 436, 165 A.2d 145 (1960). [238 Md. at 64–65, 207 A.2d at 623–24.]

Under § 40 the appeal from an order on hearing or from the denial of a hearing is de novo. *Nuger* established early on that de novo review under § 40 does not permit a court to substitute its judgment for the expertise of the Commissioner. It is also settled that "if an administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may 'affirm, modify or set aside' because a court may not usurp administrative functions." *O'Donnell v. Bassler*, 289 Md. 501, 510–11, 425 A.2d 1003, 1008 (1981). *Cf.* § 40(5) (circuit court "may reverse or modify" the Commissioner's decision). Consequently, the circuit court should not have moved beyond the issue of Dr. Magan's entitlement to a preliminary hearing and should

not have decided issues relating to the merits which had never been addressed in the first instance by the Commissioner.

Dr. Magan argues estoppel in opposition to the foregoing analysis, submitting that the Commissioner should not be permitted to shift positions. In an effort to avoid remand by the circuit court the Assistant Commissioner had volunteered that he would have rejected Dr. Magan's complaint on the merits even if it had gone to hearing and the Division's counsel had urged the circuit court to proceed to the merits. Then, when faced with the circuit court's interpretation of the Standards Clause and its holding that the statute establishing Medical Mutual also compelled that company to insure, the Commissioner turned 180 degrees. But, this change of position does not control the application of the exhaustion of administrative remedies doctrine. Our cases make plain that, even if the Commissioner had consistently urged review on the merits in the circuit court, in the Court of Special Appeals and in this Court, this case must nevertheless be remanded under the exhaustion doctrine for an agency preliminary hearing on the complaint.

Here, Dr. Magan had no contract with Medical Mutual. His objective is to have Medical Mutual compelled to enter into a contract with him, a form of relief generally unknown to the common law. The remedy which the General Assembly has created for situations involving insurers who decline to accept a particular risk lies under § 234A and related provisions and is enforced through the procedures applicable to that type of unfair trade practice under the Insurance Code.

> Where the General Assembly has provided a special form of remedy and has established a statutory procedure before an administrative agency for a special kind of case, a litigant must ordinarily pursue that form of remedy and not bypass the administrative official. *Prince George's County v. Blumberg*, 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). So strong is this public policy that

this Court will, *sua sponte*, vacate judgment and order an action dismissed where the litigants have not followed the special statutory procedure. *See Secretary, Department of Human Resources v. Wilson*, 286 Md. 639, 409 A.2d 713 (1979); *Commission on Medical Discipline v. Bendler*, 280 Md. 326, 373 A.2d 1232 (1977). [*Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982).] *See also Board of Educ. v. Hubbard*, 305 Md. 774, 787, 506 A.2d 625, 631 (1986); *Collins v. Foster*, 302 Md. 328, 332, 487 A.2d 1189, 1190 (1985); *Commission on Human Relations v. Mass Transit Admin.*, 294 Md. 225, 232, 449 A.2d 385, 388 (1982).

Dr. Magan further argues that the effect of the § 35(3) denial of the hearing requested after the Chief Investigator concluded there was no violation was a final agency ruling on the merits in favor of Medical Mutual and thus the merits were placed before the circuit court on appeal. Dr. Magan then reasons that the circuit court did not violate the exhaustion of administrative remedies doctrine because, on the agency record supplemented by de novo evidence, there was no evidence of compliance with the Standards Clause. Thus, according to the submission, the court did not substitute its judgment for the agency's inasmuch as the agency could not have ruled other than as the court did.

We have explained above how, from a procedural standpoint, the issue on appeal was whether Dr. Magan was entitled to a preliminary hearing under the agency procedures. We also reject Dr. Magan's argument on substantive grounds. The argument is premised on an interpretation of the Standards Clause which defines the concept of standards so narrowly as arguably to exclude all the evidence offered to support compliance.[11] The unarticulated basis of this argument is that, because the interpretation of

---

11. We intimate no opinion on whether there exists substantial evidence of compliance under any interpretation of the Standards Clause.

statutes is ultimately a judicial function, there would be no violation of the exhaustion doctrine if we reviewed the interpretations of the Standards Clause made by the circuit court and by the Court of Special Appeals.

This position was flatly rejected in *Commission on Human Relations v. Mass Transit Admin., supra.* That case involved a relatively pure interpretation issue in the state anti-discrimination in employment statute. The question was whether the prohibition against an employer's refusal to hire an individual because of "physical or mental handicap" included a refusal to hire for obesity. In a declaratory judgment action filed by an employer prior to agency decision on a complaint pending against that employer, a circuit court concluded that obesity was not a handicap within the statute. This Court reversed:

> Although there may be cases in some other jurisdictions supporting the ... view that administrative remedies need not be exhausted if the question is one of statutory interpretation like that presented here, this view is contrary to the settled law of Maryland. This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language. ... Moreover, to hold that the existence of a statutory interpretation issue furnishes an excuse to abort the administrative proceedings before a final agency decision, would also be inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight. [294 Md. at 232–33, 449 A.2d at 389 (citations and footnote omitted).]

The instant case involves not only the interpretation of the Standards Clause, but also the application of that clause, as interpreted, to the facts. The wisdom of the exhaustion doctrine's requirement that agency expertise first be utilized is well illustrated by but one of the many arguments on the merits advanced by Dr. Magan:

It is logically necessary that statistical evidence be used to demonstrate that a standard based on claims history is in fact correlated to future risk. There is simply no other accepted way to connect the past with the future. Insurers routinely use statistical analysis to project future losses and set rates accordingly. There are a number of statistical methods, such as regression analysis and curve fitting, that are acceptable techniques for linking the past to the future. The insurer in this case made no mention of any attempt to use any such techniques.

Analysis of this argument requires that the decision maker have pre-existing knowledge concerning industry practices in order first to determine whether evidence of those practices is absent and, if so, then to evaluate the significance thereof.

## IV

Because we remand for a hearing in the Division, at which time Dr. Magan may enlarge his complaint to include the argument that Medical Mutual violated its own organic law by failing to insure a physician licensed to practice in Maryland who desired coverage from it, we need not address the Commissioner's motion to strike that argument from Dr. Magan's brief.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMANDING THIS CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR REMAND TO THE INSURANCE DIVISION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY THE RESPONDENT, MICHAEL O. MAGAN, AND ONE–HALF BY THE INSURANCE COMMISSIONER OF MARYLAND, ONE OF THE PETITIONERS.