16 A.3d 1017 (2011)
198 Md. App. 218
AFCO CREDIT CORPORATION, et al.
v.
MARYLAND INSURANCE ADMINISTRATION.
No. 2084, September Term, 2009.
Court of Special Appeals of Maryland.
April 1, 2011.
Michael D. Berman (Patrick H. Roddy, Rifkin, Livingston, Levitan & Silver, LLC, on the brief), Bethesda, MD, for appellant.
*1018 Lisa B. Hall (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.
Panel: EYLER, DEBORAH S., KEHOE, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.
EYLER, DEBORAH S., J.
AFCO Credit Corporation and ten other premium financing companies ("PFCs") doing business in Maryland (collectively "AFCO" or "the appellants"),[1] the appellants, challenge a decision of the Insurance Commissioner (the "Commissioner") of the Maryland Insurance Administration ("MIA") to grant, but stay, a requested hearing pending the outcome of a related case. AFCO requested the hearing to challenge certain new requirements for all PFCs licensed in Maryland bearing on the amount and timing of the collection of interest. The Circuit Court for Baltimore City dismissed AFCO's petition for judicial review, ruling that the Commissioner possessed the discretionary authority to stay the hearing and thus the decision was not a final agency decision from which AFCO could appeal.
AFCO appeals the circuit court judgment, posing four questions for our review, which we have rephrased and condensed as three:
I. Was the Commissioner's Order staying AFCO's requested administrative hearing a final administrative decision or otherwise ultra vires?

II. Was the Commissioner obligated to delegate hearing authority to the Office of Administrative Hearings ("OAH") under the circumstances?
III. Did the Commissioner have the authority pursuant to the Premium Financing Act to adopt the new licensing requirements for PFCs?[2]
For the reasons to follow, we shall answer Question I affirmatively. We decline to consider Questions II and III, given our disposition of Question I.

FACTS AND PROCEEDINGS
The appellants all are PFCs serving primarily commercial customers. PFCs are companies that provide loans ("premium finance agreements" or "PFAs") to businesses and individuals to allow the borrowers *1019 to prepay insurance premiums. The vast majority of these PFAs involve automobile insurance premiums. PFCs are governed by the Premium Financing Act, Md.Code (2006 Repl.Vol., 2010 Supp.) section 23-101 et seq. of the Insurance Article ("Ins."). Pursuant to Ins. section 23-304, PFCs may charge interest on the PFAs "at a rate not exceeding 1.15% for each 30 days, charged in advance." In the event a borrower defaults on a PFA, the PFC is authorized, pursuant to a limited power of attorney, to cancel the borrower's insurance policy, collect any unearned portion of the premium from the insurer, and recoup the principal and interest on the loan. See Ins. §§ 23-401-23-406. Any remaining surplus is returned to the borrower.
In 2008, pursuant to Ins. section 23-207, the MIA commenced an investigation into the methods used by nine other PFCs in calculating the finance charges on their PFAs. The PFCs under investigation (the "Consumer PFCs") all primarily extended consumer loans.[3] At the conclusion of the investigation, on October 6, 2008, the Commissioner found that the Consumer PFCs were collecting interest in excess of the statutory maximum and issued an "Order to Cease and Desist" directing them to stop using the forms and accounting methods that had produced the illegality.
The Consumer PFCs requested an administrative hearing before an Administrative Law Judge ("ALJ") at the Office of Administrative Hearings ("OAH") to challenge the Commissioner's findings. The Commissioner granted the hearing request, but declined to transfer the case to the OAH, instead delegating the authority to preside over the hearing to the Associate Deputy Commissioner ("ADC"). On December 9, 2008, a three-day administrative hearing commenced. Thirteen witnesses testified, including the Commissioner, and 47 exhibits comprising over 1,000 pages were introduced into evidence.
On January 22, 2009, the ADC issued a memorandum opinion and order upholding the Order to Cease and Desist. The ADC also rejected the Consumer PFCs' argument that the case was required to be transferred to the OAH under the circumstances. Specifically, the Consumer PFCs had asserted that the Commissioner's direct involvement in the investigation leading to the Order to Cease and Desist, coupled with his public comments about the investigation, rendered the MIA an improper forum for their claims to be adjudicated.
On February, 2009, the Commissioner issued a press release to all PFCs licensed in Maryland informing them of the MIA action and providing an internet address where interested persons could access the memorandum opinion and order.
The Consumer PFCs petitioned for judicial review in the Circuit Court for Baltimore City. The court heard argument in the case, captioned Central Acceptance Company, Inc. v. Insurance Commissioner of the State of Maryland ("Central Acceptance") and, on April 22, 2009, reversed and remanded. The court did not reach the merits of the Commissioner's Order to Cease and Desist. Rather, it found that the ADC should not have been permitted to preside over the administrative hearing. *1020 The court held that, under the "command influence" doctrine set forth by this Court in Mayer v. Montgomery County, 143 Md. App. 261, 794 A.2d 704 (2002),[4] it was improper for the ADC, who was appointed by and subordinate to the Commissioner, to be in a position where she was effectively being asked to second-guess the Commissioner's findings and legal conclusions. The Commissioner noted a timely appeal from the circuit court's decision.
A little more than two months later, on June 1, 2009, the Commissioner sent a notice to all PFCs registered in Maryland of new requirements affecting their annual renewal of registration on July 1, 2009. Each PFC applying for renewal of its registration was required to demonstrate its compliance with the new requirements for its registration to be approved. The new requirements concerned the means of calculating interest on PFAs and generally prohibited the methods found to violate the Insurance Article in Central Acceptance. The specific practices deemed improper by the Commissioner were use of the "Rule of 78s" to calculate interest when the borrower defaults prior to the end of the policy term;[5] the collection of interest on policies that were declared void ab initio by the borrower's insurer; and the collection of interest after default by the borrower, but before repayment of the loan by the insurer or the borrower.[6]
AFCO renewed its registration by agreeing to comply with the new requirements, *1021 but then, on June 29, 2009, filed an "Administrative Complaint, Request for Hearing and Request for Stay to Continue Business" challenging the Commissioner's statutory authority to issue the new requirements and asking that it be permitted to continue operating under the terms of its prior license pending a decision on the complaint.
That same day, the Commissioner issued a "Notice of Hearing" stating that he would "conduct a hearing on the denial of renewal registrations of [PFCs]."[7] The Notice further stated that the hearing requests all would be consolidated in a single hearing. Finally, the Notice requested that
[a]ll interested parties . . . state in writing, within 10 days of the date of this notice or simultaneously with the filing of any [new] request for hearing or motion to intervene, whichever is later, their respective positions on the question of whether all proceedings herein should be stayed pending final judicial resolution of [Central Acceptance]. Pending the filing of such statements and further Order, all proceedings herein are STAYED.
Attached to the Notice was a list of 27 PFCs currently participating in the consolidated hearing, including all nine PFCs from Central Acceptance and all but two of the appellants in the instant case. The remaining two appellants in the instant case later filed requests for a hearing and were subsequently added to the list.
On July 8, 2009, AFCO filed a motion to intervene in the consolidated matter,[8] and to sever its claims from the claims of the other PFCs. It argued that it should not be obligated to litigate its claims with those PFCs whose claims already had been decided by the Commissioner in Central Acceptance. It also expressed its view that the consolidated case could not and should not be stayed and that the case should be transferred to the OAH.
On July 13, 2009, the Commissioner issued an Order ("July 13, 2009 Order") staying the consolidated hearing until "the conclusion of judicial proceedings in Central Acceptance." The Order set forth the Commissioner's reasoning as follows:
Most, but not all, PFCs have requested that these proceedings be stayed pending the outcome of Central Acceptance. The parties requesting a stay have articulated sound reasons for that position. See, e.g., letter dated July 8, 2009, from Mr. Wise; letter dated July 8, 2009, from Mr. Donner. The thin counter argument is illogical and unpersuasive. As stated in the letters of Mr. Wise and Mr. Donner requesting a stay, the ultimate resolution of the substantive (statutory interpretation) issues in Central Acceptance will control the outcome of a number of the principal issues in this matter. In all likelihood, many, if not all, of the issues in this case will be susceptible to summary disposition once proceedings are concluded in Central Acceptance.

*1022 On July 17, 2009, in the Circuit Court for Baltimore City, AFCO petitioned for judicial review of the July 13, 2009 Order. It also filed various other motions and pleadings not relevant to the issues on appeal. The MIA moved to dismiss the petition, arguing that the July 13, 2009 Order was not a final administrative action and therefore was not appealable.
On October 20, 2009, argument was heard on AFCO's petition. At the conclusion of the hearing, the court ruled from the bench that the Commissioner possessed the discretion to stay the contested case hearing, opining:
The [C]ommissioner in this instance has not refused to grant a hearing. The question we have before us is when does the hearing have to be held? The [C]ommissioner has not yet said you can't have a hearing. The [C]ommissioner in this case is saying, you can have a hearing but you're not having it now. You are not having it now because there are a lot of consolidated cases and they are all in front of the appellate court.
The court concluded that, because the Commissioner acted within his discretion in staying the hearing, the failure to hold a hearing within the 30-day period provided under the statute did not operate as a "refusal" to hold a hearing. Hence, it was not a final agency action and was not appealable. For that reason, the court dismissed the petition for judicial review.
AFCO noted a timely appeal from the dismissal of its petition.
In June of 2010, this Court heard argument in the Central Acceptance case. AFCO was permitted to participate as amicus curiae. On December 21, 2010, a divided panel of this Court issued an unreported opinion affirming the circuit court's ruling reversing and remanding the case to the MIA for a new hearing. Ins. Comm'r v. Cent. Acceptance Co., Inc., No. 813, Sept. Term 2009 (Dec. 21, 2010). The majority agreed with the circuit court that it was inappropriate for the Commissioner to have delegated hearing authority to the ADC because, like in Mayer, supra, the ADC was "charged with re-making a decision of [her] immediate supervisor." 143 Md.App. at 279, 794 A.2d 704. Specifically, the majority noted that the ADC had been appointed by the Commissioner; the Commissioner had issued factual findings and reached legal conclusions in his Order to Cease and Desist, and the Commissioner actually had testified at the hearing before the ADC in support of his interpretation of the Insurance Article. Thus, the majority held that the case fell squarely within Mayer's "command influence" exception to the Commissioner's discretionary authority to delegate hearing authority to the ADC. In affirming the decision of the circuit court, the majority remanded the Central Acceptance case to the MIA for a new contested case hearing before an impartial hearing officer.[9]
*1023 We shall include additional facts in our discussion of the issues.

DISCUSSION

I.

Authority to Stay Hearing
AFCO contends the Commissioner had no authority under the pertinent provisions of the Insurance Article and COMAR to stay the requested contested case hearing. And it maintains that the decision to stay the hearing actually amounted to a "refus[al]" to hold the hearing and that a refusal is a final appealable order. The Commissioner counters that he possessed the inherent authority to stay the hearing when, as here, the issues presented were duplicative of those in Central Acceptance and when all other parties agreed that a stay was the appropriate course of action.
We begin with the statutory and regulatory framework. Section 2-210 of the Insurance Article, entitled "Hearings," provides, in pertinent part:
(a) In general.(1) The Commissioner may hold hearings that the Commissioner considers necessary for any purpose under this article.
(2) The Commissioner shall hold a hearing:
(i) if required by any provision of this article; or
(ii) on written demand by a person aggrieved by any act of, threatened act of, or failure to act by the Commissioner or by any report, regulation, or order of the Commissioner, except an order to hold a hearing or an order resulting from a hearing.
(b) Demand for hearing; action by Commissioner.(1) A demand for a hearing shall state the grounds for the relief to be demanded at the hearing.
(2) Within 30 consecutive days after receiving a demand for a hearing, the Commissioner shall:
(i) grant and, unless postponed by mutual consent of the parties, hold the hearing; or
(ii) issue an order refusing the hearing.
(3) If the Commissioner does not grant or refuse a hearing within the 30-day period, the hearing is deemed to have been refused.
COMAR 31.02.01.03 also pertains to hearings before the Commissioner, providing at Part E:
Upon receipt of a proper request, the Commissioner shall grant a hearing unless:
(1) In viewing the facts set forth by the person making the request, in the light most favorable to that person, the Commissioner has no authority to take action;
(2) The Commissioner determines that the request is frivolous or made in bad faith;
(3) The request does not contain the information required by these regulations;
(4) The request is untimely; or
(5) At the end of the Commissioner's review, the request is moot.
The scope of judicial review of a decision of the MIA is governed by Ins. section 2-215:
(a) Authorized appeals.An appeal under this subtitle may be taken only from:
(1) an order resulting from a hearing; or

*1024 (2) a refusal by the Commissioner to grant a hearing.
There is no dispute that, in the instant case, AFCO, an aggrieved party, made a timely, "written demand" to the Commissioner for a hearing. Ins. § 2-210(a)(2)(ii). Therefore, the Commissioner was obligated to hold a hearing on AFCO's claims. Id. Pursuant to the statute, the Commissioner was to "grant and . . . hold" the hearing "[w]ithin 30 consecutive days after [the Commissioner] receive[d]" the demand for a hearingby July 29, 2009 unless the hearing was "postponed by mutual consent of the parties." Id. at § 2-210(b)(2). A failure to either grant a hearing request or issue an order refusing a hearing request within the thirty-day period operates as a refusal under the statute. Id. at § 2-210(b)(3). An appeal may be taken from a "refusal by the Commissioner to grant a hearing." Id. at § 2-215(a)(2).
As discussed, supra, on June 29, 2009 the same day AFCO made its hearing requestthe Commissioner issued a Notice of Hearing granting and consolidating the hearing requests received by numerous PFCs, including AFCO. The Notice did not set a date for the hearing; instead it sought input from all parties as to whether the hearing should be stayed until the resolution of the Central Acceptance case. After receiving input from the parties, the Commissioner issued the July 13, 2009 Order determining that a stay was appropriate given that the issues in Central Acceptancethen pending review before this Courtwere likely to overlap significantly with the issues in the instant case.
Thus, the threshold issue before this Court is whether the July 13, 2009 Order was an order "refusing the hearing" or whether, by the expiration of 30 days without a hearing having been held, the hearing was refused by operation of law. If it was either, the petition for judicial review was not premature under Ins. section 2-215(a).[10]
The circuit court dismissed AFCO's petition for judicial review of the July 13, 2009 Order because it concluded that it was not an appealable order under Ins. section 2-215(a). This was so because the July 13, 2009 Order was not an "order resulting from a hearing" as no hearing had yet been held, and it also did not operate as a "refusal by the Commissioner to grant a hearing," as it clearly anticipated that a hearing would be held after the Central Acceptance case was resolved.
According to AFCO, the circuit court erred in ruling that the July 13, 2009 Order was not final and appealable because once "thirty days passed without a hearing, [it was] fully and finally denied [its] unconditional, statutory right to a prompt hearing." It relies, primarily, on Muhl v. Magan, 313 Md. 462, 545 A.2d 1321 (1988), for this argument.
In Muhl, a physician, Dr. Magan, was denied medical malpractice insurance. He filed a written complaint with the Commissioner contending that the insurer had violated a statutory prohibition against unfair and discriminatory underwriting practices. After requesting comment from the insurer, the Chief Investigator for the Insurance Division determined that the insurer was not in violation of the law, having denied Dr. Magan coverage based on his adverse claims history, not for any discriminatory reason. Dr. Magan requested *1025 a hearing before the Commissioner.[11]
Dr. Magan's right to a hearing was governed by the then-existing "Preliminary Hearing Regulations," which provided, like current Ins. section 2-210, that
[t]he Commissioner shall hold a hearing. . . upon written demand therefor by a person aggrieved by any act, threatened act, or failure of the Commissioner to act. . . . [U]nless postponed by mutual consent, such hearing shall be held within thirty (30) consecutive calendar days after receipt by the Commissioner of demand therefor.
COMAR 30.09.35(2) (1986).
The Assistant Commissioner replied to the hearing request the next day, advising that he was seeking further information from the insurer and, after receiving that information, would "`render a decision as to whether [the Chief Investigator's] decision should be sustained.'" Muhl, supra, 313 Md. at 471, 545 A.2d 1321. The letter went on to explain that, if the Assistant Commissioner concluded that the decision should be upheld, he would then determine if Dr. Magan's "`request for a hearing meets the criteria set forth'" under the Preliminary Hearing Regulations. Id.
Thirteen days after making his hearing request, Dr. Magan forwarded additional materials to the Assistant Commissioner and "stated [his] intent `to elaborate on it at length through oral testimony at the hearing to which we are entitled under the Statute.'" Id. at 471-72, 545 A.2d 1321. Forty-seven days after making his hearing request, having received no further correspondence from the Assistant Commissioner, Dr. Magan filed an appeal in the circuit court. Shortly thereafter, the Assistant Commissioner wrote to Dr. Magan and the insurer expressing his surprise at the appeal and also rendering an opinion that the insurer's denial of coverage was permitted under the Statute.
During argument in the circuit court, the Insurance Division asserted that the circuit court should reach the merits of the Assistant Commissioner's post-appeal decision because under the circumstances remand would be fruitless. Dr. Magan agreed. He advanced an argument at the hearing, however, that he never had raised before the Insurance Division. The circuit court ruled in Dr. Magan's favor based in part on this new legal theory that the insurer was required to underwrite the insurance policy. The circuit court remanded the case to the Insurance Division for the limited purpose of ordering the insurer to issue the policy. On appeal by the Commissioner and the insurer to this Court, we affirmed the circuit court's judgment. Med. Mutual Liab. Ins. Soc'y v. Magan, 72 Md.App. 330, 529 A.2d 841 (1987).
The Court of Appeals granted certiorari and reversed, holding that both the circuit court and this Court had erred in reaching the merits of Dr. Magan's claim:
The agency action giving rise to the appeal to the circuit court was the denial of a preliminary hearing on Dr. Magan's complaint. That denial came about by operation of law due to the Division's inaction for thirty days following Dr. Magan's request of November 13, after he was aggrieved by the Chief Investigator's conclusion that there had been no violation. Thus, the issue on appeal should have been confined to whether *1026 the preliminary hearing was properly denied.
Muhl, supra, 313 Md. at 477, 545 A.2d 1321. Moreover, the Court rejected Dr. Magan's argument that the Commissioner should be estopped to argue for remand to the Insurance Division to conduct a hearing when it had argued before the circuit court that that court should reach the merits. The Court opined that the doctrine of exhaustion of administrative remedies was not subject to estoppel and that the Court was required to remand the case for a final agency decision. Finally, the Court emphasized that, even though the issue decided by the circuit court and this Court was primarily a legal question, it nonetheless was the Insurance Division's prerogative to decide that issue in the first instance, given that agencies are entitled to some deference in their interpretation of the statutes they are charged with administering.
Returning to the instant case, AFCO asserts that Muhl "resolve[s] the threshold issue that is before the Court" of whether the failure to hold a hearing within 30 days after the hearing request is a final appealable order. We disagree. We read Muhl to stand for the proposition that this Court (and the circuit court) may not reach the merits of an administrative claim that has not first been decided by the agency. It does not, however, answer the question whether the Commissioner has the power to grant a hearing request, but then stay the hearing. In Muhl, it was the Commissioner's "inaction for thirty days" that gave rise to Dr. Magan's right to appeal the denial of the hearing. Here, in contrast, the Commissioner acted by issuing the Notice of Hearing, seeking input, and issuing the July 13, 2009 Order staying the hearing until such time as Central Acceptance was judicially resolved. If the Commissioner possessed the power to stay the hearing, there was no refusal of a hearing and the petition for judicial review was premature.
AFCO asserts that Ins. section 2-210 requires that a hearing be held within 30 days of a proper written demand and that postponement of the hearing is permitted only upon "mutual consent of the parties." The MIA argues that the hearing properly was postponed because the majority of the parties to the consolidated hearing agreed to a stay. A postponement, however, suggests that the hearing date was rescheduled from an earlier date to a future date. Here, no date ever was set for the hearing. Moreover, we agree with AFCO that the term "mutual consent of the parties" must be read to mean unanimous consent. Here, at least 11 parties before the Commissioner did not consent to a "postponement" or a stay; there could be no mutual consent under the circumstances.
The MIA cites to numerous appellate decisions standing for the proposition that administrative agencies have broad discretionary powers in their conduct of hearings and other adjudicatory proceedings. See, e.g., Maryland State Police v. Zeigler, 330 Md. 540, 557-58, 625 A.2d 914 (1993) (decision to reopen a hearing to receive additional evidence committed to the sound discretion of the agency). It further asks this Court to imply from certain COMAR provisions governing the "Conduct of [a] Hearing" discretion on the Commissioner's part to stay a hearing. See COMAR 31.02.01.07 (empowering the hearing officer to "conduct the hearing and . . . allow the case to proceed in a manner necessary to ensure the fair resolution of the issues" and to "rule on all procedural matters, including motions, objections and offers of proof"). While the MIA is correct that the Commissioner or his delegee have broad discretion in the conduct of a hearing, we are not presented with a question about *1027 how a hearing may be conducted; rather, we are asked to decide when it must be held.
The plain language of the Insurance Article directs the Commissioner to hold a hearing "within 30 days" of a proper written demand. The only alternative provided under the statute to holding a hearing within that time frame is postponement by mutual consent, which we already have determined did not occur. While a stay of the hearing may have been the most efficient course of action under the circumstances, it simply was not authorized by the statute. See Doe v. Montgomery County Bd. of Elections, 406 Md. 697, 712, 962 A.2d 342 (2008) ("If the language of the statute is clear and unambiguous, [the Court] need not look beyond the statute's provisions and our analysis ends.").
Having concluded that the Commissioner was obligated to hold a hearing within 30 days of AFCO's written demand and did not possess the power to stay the hearing, "the hearing is deemed to have been refused" under Ins. section 2-210(b)(3). Pursuant to Ins. section 2-215(a)(2), a party may appeal "a refusal by the Commissioner to grant a hearing." Accordingly, AFCO's petition for judicial review was not premature and the circuit court erred in dismissing it as such. For the same reason the petition for judicial review was from a final agency action, the relief sought in the petition should have been granted, i.e., the circuit court should have vacated the July 13, 2009 Order and remanded the case to the MIA for a hearing to be held in accordance with Ins. section 2-210.

II & III
AFCO argues that we should also reach the issues of whether the Commissioner was obligated to transfer this matter to the OAH and whether the Commissioner lacked the authority to issue the new requirements for registration of a PFC in Maryland. As Muhl makes clear, however, "the issue on appeal [is] confined to whether the . . . hearing was properly denied." 313 Md. at 477, 545 A.2d 1321. Thus, we must remand this case to the circuit court with directions to vacate the July 13, 2009 Order and further remand the case to the MIA for a hearing. We express no opinion as to whether the hearing may be held before the Commissioner or a delegee or whether it must be transferred to the OAH for a hearing before an ALJ.[12]
ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY DISMISSING THE PETITION FOR JUDICIAL REVIEW REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO VACATE THE JULY 19, 2009 ORDER OF THE INSURANCE COMMISSIONER AND TO REMAND THE CASE TO THE MARYLAND INSURANCE ADMINISTRATION FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.
NOTES
[1] The other appellants are AFCO Premium Credit LLC; Prime Rate Premium Finance Corporation, Inc.; AON Premium Finance, LLC; Cananwill, Inc; First Insurance Funding Corporation; Premium Assignment Corporation; Premium Financing Specialists, Inc.; Broadway Premium Funding; AICCO, Inc.; and AI Credit Corp.
[2] As worded by AFCO, the questions presented were:

1. Was MIA's July 13, 2009, decision, indefinitely staying the requested administrative hearing, a final administrative decision, in light of the statutory requirement that MIA shall "hold" a hearing within thirty days after request, "unless postponed by mutual consent?"
2. Was the MIA's indefinite stay of the administrative case ultra vires?
3. Was the MIA Commissioner permitted to act, over objection, as the presiding officer in a case challenging his own decisions, after he had: testified in a related case, and publicly made statements, supporting those decisions; participated in settlement discussions, where it was alleged that he had breached his agreement to negotiate; and considered ex parte communications, over objection?
4. Was MIA permitted to reverse approximately forty years of administrative practice and, without rule-making or advance notice, impose new requirements that compelled commercial lenders to: forego interest on outstanding loans that were in default; and, earn interest using a method that rewards borrowers that default while penalizing those that perform?
(Footnote omitted.)
[3] To register a motor vehicle in Maryland, individuals are required to provide proof of insurance coverage. See Md.Code (2009 Repl.Vol., 2010 Supp.) §§ 17-103 and 17-104 of the Transportation Article. If an individual is unable to obtain private insurance, he or she may purchase insurance through the Maryland Automobile Insurance Fund ("MAIF"). MAIF does not finance insurance premiums and requires its premiums to be paid in full at the inception of the policy. Individuals purchasing automobile insurance through MAIF often obtain financing from PFCs to pay their premiums.
[4] In Mayer, a sergeant with the Montgomery County Police Department took a promotional exam. Unsatisfied with the scoring of his exam, he filed a grievance with the Office of Human Resources ("OHR"). His grievance was denied by the Director of the OHR in a written "Step II" response. He appealed the denial of his grievance and requested a "Step III" hearing. His request for a hearing was granted and the hearing was to be conducted by the Human Resources Specialist ("HRS"), a subordinate of the Director of OHR. Mayer's request for the hearing to be conducted by a party not "subject to [the Director's] `command influence'" was denied. Id. at 268, 794 A.2d 704. The HRS held the hearing and denied Mayer's grievance. The denial of Mayer's grievance was upheld by the Board of Appeals and by the circuit court on a petition for judicial review.

On appeal to this Court, we held that the hearing process utilized by the OHR was not fair and did not adequately protect Mayer's due process rights. We reasoned that, when the Step III hearing was conducted by a subordinate of the Step II decision-maker, "there [was] a substantial likelihood that the hearing officer's view of the case [would] be tainted and that he therefore [would] not render an impartial decision; and even if there [was] no actual partiality, the process appear[ed] not to be impartial." Id. at 277, 794 A.2d 704. We thus vacated the decision of the circuit court and remanded the case to the Board of Appeals for a new Step III hearing.
[5] The "Rule of 78s" or the "Sum of the Digits" method operates as follows:

[W]hen a loan is to be repaid in monthly installments, each month of the loan's term is assigned a digit, with the first month's digit equaling the total number of months in the agreed period of the loan. The second month is then assigned a digit one less than that of the first, the third month again one less, and so on, until the digit assigned to the last month equals (1) one. For a twelve-month loan, the sum of the digits (12 + 11 + 10 . . . + 1) of this arithmetic progression is 78. This number then serves as the denominator in a fractional equation, with the numerator being the sum of the digits for those months expired at the time of the obligation's prepayment. For example, assuming a twelve month loan obligation, if the entire loan were prepaid at the end of the first month, 12/78 of the total finance charge would be retained by the creditor.
Bone v. Hibernia Bank, 493 F.2d 135, 137 (9th Cir.1974) (footnote omitted). Thus, under the Rule of 78s, the PFC benefits when the insurance policy is canceled prior to the expiration of the term.
[6] The third requirement was not raised in Central Acceptance.
[7] Unlike AFCO, many other PFCs had their renewal applications denied because they did not demonstrate that they intended to comply with the new requirements. The Commissioner's notice of hearing directed that those PFCs whose renewal registrations were denied and also had requested a hearing would be permitted to continue doing business in Maryland under their prior registrations pending a final action by the Commissioner.
[8] As mentioned, supra, AFCO already was a part of the consolidated action. Because the Notice of Hearing referenced only PFCs whose registrations had been "denied," it appears that AFCO moved to intervene out of an abundance of caution.
[9] In a dissenting opinion, Judge Zarnoch disagreed that Mayer controlled. He distinguished Mayer on the basis that, in that case, two adjudicatory proceedings occurred. The first proceeding rejected the employee's grievance in a written Step II decision and the second rejected his grievance at a Step III hearing. In Central Acceptance, according to Judge Zarnoch, the Commissioner's Order to Cease and Desist was, in effect, a statement of charges stemming from the MIA investigation. It was not the result of an adjudicatory process and its effect was stayed immediately by the Consumer PFCs' request for a hearing.

Also, unlike in Mayer, Judge Zarnoch concluded that the ADC was deciding a pure question of law (despite some contrary language in her memorandum opinion). (It was undisputed that the Consumer PFCs were engaging in the practices deemed illegal by the Commissioner.) Thus, the de novo review of the ADC's decision in this Court would cure any perceived problem of "command influence," according to Judge Zarnoch.
[10] AFCO actually filed its petition for judicial review prior to the expiration of 30 days following its hearing request. It was clear from the July 13, 2009 Order that a hearing would not be held in the relevant 30-day period, however.
[11] Dr. Magan actually twice requested a hearing. The first request was made prior to the Insurance Division rendering any opinion on the matter, however. At that time, the decision to grant a hearing was purely discretionary. His second request was the only relevant request before the Court.
[12] The Commissioner in office at all times relevant to the instant appeal has since resigned. The impact of his resignation, if any, is a matter to be addressed by the new Commissioner on remand.