20 A.3d 838

**SALISBURY UNIVERSITY**

v.

**JOSEPH M. ZIMMER, INC.**

No. 462, Sept. Term, 2010.

Court of Special Appeals of Maryland.

May 27, 2011.

Dana A. Reed (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellant.

Kenneth K. Sorteberg (Huddles, Jones, Sorteberg & Dachille PC, on the brief) Columbia, MD, for appellee.

EYLER, JAMES R., KEHOE, IRMA S. RAKER, (Retired, specially assigned), JJ.

EYLER, JAMES R., J.

The primary question presented by this case is whether COMAR 21.11.03.14, a regulation issued by the Board of Public Works ("BPW") is *ultra vires* because it conflicts with Maryland Code (2009 Repl.Vol.), §§ 15–215 and 15–217 of the State Finance & Procurement Article ("F.P."). We shall answer the question in the affirmative.

## Facts and Proceedings

The conflict in this case arises out of a bid solicitation by Salisbury University, appellant, for a contractor to replace a chiller at the University. Joseph M. Zimmer, Inc., appellee, was one of several contractors to submit a bid. Appellee submitted the apparent low bid. Appellant later rejected the bid, however, because the bid requirements set a minority business entity ("MBE") participation goal of 10%, and after reviewing appellee's bid, appellant's procurement officer determined that the subcontractor that appellee proposed to use to meet the MBE goals was not certified as a minority business. Thus, appellant concluded that appellee's bid was not responsive to the bid requirements.

Believing it had met the MBE goal, appellee filed a bid protest with appellant on April 1, 2009. By letter dated May 13, 2009, appellant responded to appellee's bid protest, reiterating in detail its reasons for deeming the bid non-responsive. Appellant refused to issue a final decision, however, taking the position in its May 13, 2009 letter that, under COMAR 21.11.03.14, appellee had no right to protest the rejection of its bid.

Appellee appealed appellant's rejection of the protest to the Maryland State Board of Contract Appeals ("MSBCA" or "Board"). Appellant moved to dismiss the appeal on the

ground that, under COMAR 21.11.03.14, a protest could not be filed to challenge MBE issues, consequently, the Board lacked jurisdiction to consider the protest. The Board agreed with appellant and dismissed the appeal. Appellant then awarded the contract at issue to another contractor, who completed the work.

Appellee filed a petition for judicial review in the Circuit Court for Baltimore County, which reversed the Board. Appellant then noted an appeal to this Court. Like the circuit court, we hold that the regulation is invalid.

### Standard of Review

In reviewing administrative decisions, we bypass the judgment of the circuit court and look directly at the administrative decision. *White v. Workers' Comp. Comm'n,* 161 Md. App. 483, 487, 870 A.2d 1241 (2005); *see, e.g., Gigeous v. E. Corr. Inst.,* 363 Md. 481, 495–96, 769 A.2d 912 (2001) (On appeal, "we reevaluate the decision of the agency, not the decision of the lower court.").

In this case, we review the Board's legal decision concerning the regulation at issue. "In contrast to the deferential review accorded to an agency's factual findings, questions of law receive no deference on review; we are not bound by the agency's interpretation of law." *Mayer v. Montgomery County,* 143 Md.App. 261, 794 A.2d 704 (2002) (citations omitted). In fact, "a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *Id.* (citations omitted).

### Discussion

There are essentially two issues on appeal: (1) whether this case should be dismissed as moot, and (2) whether COMAR 21.11.03.14 is valid. Before addressing these issues, and ultimately answering each in the negative, we engage in a background discussion of the relevant legal framework surround-

ing state procurement contracts, followed by a summary of the parties' contentions.

### 1. Background Discussion

Title 11 of the State Finance & Procurement Article, F.P. §§ 11–101 to 11–306, deals with general procurement law. Section 11–101(m) and (n) define "procurement" and "procurement contract," respectively, very broadly:

(m) *Procurement.*—(1) "Procurement" means the process of:

(i) leasing real or personal property as lessee; or

(ii) buying or otherwise obtaining supplies, services, construction, construction related services, architectural services, engineering services, or services provided under an energy performance contract.

(n) *Procurement contract.*—(1) "Procurement contract" means an agreement in any form entered into by a unit for procurement. . . . .

Title 12, Subtitle 1, F.P. §§ 12–101 to 12–109, deals specifically with "State Procurement Organization." The BPW has general control over procurement, including the authority to adopt regulations. *See* § 12–101(b)(ii). Title 13, F.P. §§ 13–101 to 13–402, deals with source selection and the formation of procurement contracts, neither of which is relevant to our analysis in this case.

Procurement preferences, including the MBE program, are discussed in Title 14, F.P. §§ 14–101 to 14–505. The MBE program in particular is discussed in Subtitle 3, F.P. §§ 14–301 to 14–309. Notably, subject to one irrelevant exception,[1]

---

**1.** The one exception to the statement that Title 14 includes no discussion of MBE-related dispute resolution is found in F.P. § 14–304, which contains provisions addressing the procedure that applies when an MBE is decertified. *See* F.P. § 14–304(b). That procedure is limited to MBE certification and does not address the award or failure to award a specific procurement contract.

Title 14 does not include dispute resolution procedures for MBE-related conflicts.

Section 14–301(f) defines an MBE as follows:

(f) *Minority business enterprise.*—(1) "Minority business enterprise" means any legal entity, except a joint venture, that is:

(i) organized to engage in commercial transactions;

(ii) at least 51% owned and controlled by 1 or more individuals who are socially and economically disadvantaged; and

(iii) managed by, and the daily business operations of which are controlled by, one or more of the socially and economically disadvantaged individuals who own it.

A "socially and economically disadvantaged individual" is defined in § 14–301 as "a citizen or lawfully admitted permanent resident of the United States" who either (1) falls into one of the following minority groups: African American, American Indian/Native American, Asian, Hispanic, the physically or mentally disabled, or women; or (2) is "otherwise found by the certification agency to be a socially and economically disadvantaged individual." § 14–301(i)–(ii).

Subsection (a) of F.P. 14–303 gives the BPW authority to, *inter alia,* adopt regulations implementing Subtitle 3:

(a) *In general.*—(1)(i) In accordance with Title 10, Subtitle 1 of the State Government Article, the Board shall adopt regulations consistent with the purposes of this Division II to carry out the requirements of this subtitle.

F.P. § 14–303(a)(i). Pursuant to its authority under F.P. 14–303(a), the BPW adopted COMAR 21.11.03.14, which provides as follows:

.14 Protests.

A protest under COMAR 21.10.02 may not be filed:

A. To challenge a decision whether an entity is or is not a certified MBE; or

B. Concerning any act or omission by a procurement agency under this chapter.

Subsection (b) of F.P. 14–303 then sets forth "required regulations," *i.e.,* regulations that BPW must promulgate. F.P. §§ 14–303(b)(1)–(15). Regulations concerning MBE procurement dispute resolution are not among those required under subsection (b).

Title 15, F.P. §§ 15–101 to 15–226, dedicates an entire subtitle, Subtitle 2, to dispute resolution for procurement contracts *generally (i.e.,* not MBE-specific contracts). *See* F.P. §§ 15–201 to 15–226. Section 15–210 directs the MSBCA to "adopt regulations that provide for informal, expeditious, and inexpensive resolution of appeals before the Appeals Board." [2]

Part III of Subtitle 2, F.P. §§ 15–215 to 15–225 is dedicated to "Procedures for Dispute Resolution." The following sections of that Part are relevant to our analysis below:

**§ 15–215. Definitions.**

(A) *In general.*—In this Part III of this subtitle the following words have the meanings indicated.

. . .

(c) *Protest.*—(1) "Protest" means a complaint that relates to the formation of a procurement contract.

(2) "Protest" includes a complaint about:

(i) the qualifications of a bidder or offeror; or

(ii) the determination of the successful bidder or offeror.

**§ 15–217. Initiation of protest or contract claim.**

(a) *In general.*—(1) A prospective bidder or offeror, a bidder, or an offeror may submit a protest to the procurement officer.

(2) A unit or a person who has been awarded a procurement contract may submit a contract claim to the procurement officer.

---

2. For purposes of our discussion below, we note in passing that the authority granted by the General Assembly to adopt regulations under Title 15 is granted to the MSBCA, while the authority under Title 14 is granted to the BPW. This is of no import to our analysis.

Notably, F.P. § 15–202 expressly exempts "contract[s] for architectural services or engineering services" from the ambit of Subtitle 2. Those are the only exemptions mentioned. Thus, except where expressly exempted, Subtitle 2 of Title 15 covers *all* procurement contracts, including MBEs.

## 2. Parties' Contentions

Appellee argues primarily that COMAR 21.11.03.14 (providing that, if the bidder is denied a contract because its MBE program does not pass muster, the bidder cannot file a bid protest) is *ultra vires* because it is in direct and irreconcilable conflict with F.P. §§ 15–215 and 15–217 (providing conjointly that a bidder may file a bid protest to complain about the qualifications of the bidder or the determination of the successful bidder).

Appellant essentially makes four arguments in response to appellee's *ultra vires* argument. First, appellant highlights the preamble to Maryland's first MBE law, which was enacted in 1978 and codified in Md. Ann.Code Art. 41 § 483 (1978 Repl.Vol.), titled "Governor–Exec. and Admin. Depts." The preamble notes that the MBE law does not create a private right of action with respect to the State's implementation of the law, but rather is a "policy direction to the Executive which is enforceable merely through the oversight function of the General Assembly." 1978 Laws of Md. ch. 575 at 1830. The law was re-enacted in 1983 Law of Md. Ch. 193 at 847, and the General Assembly re-incorporated the 1978 preamble. Appellant implies that this preamble supports the regulation's prohibition on filing MBE-related protests.

Second, appellant argues that "[t]he MSBCA has applied COMAR 21.11.03.14 to determine that it does not have jurisdiction to review agency decisions on MBE matters," and, *following* the first such decision in 2004, the General Assembly, in 2006, re-enacted the MBE law. Thus, appellant contends the fact that the General Assembly re-enacted the MBE statute after the MSBCA decision applying the regulation is

evidence that the regulation conforms to the legislative intent behind the MBE statute.

Next, appellant suggests that COMAR 21.11.03.14 is not inconsistent with F.P. §§ 15–215 and 15–217 because the General Assembly could give the Board jurisdiction to hear Title 15 disputes (procurement disputes *generally*) but not give it jurisdiction to hear Title 14 disputes (MBE-related procurement disputes in specific). Appellant reasons that "COMAR 21.11.03.14 was not enacted pursuant to the general procurement dispute resolution statutes [of Title 15], but pursuant to the separate authority given to the BPW in Title 14 to enact regulations implementing the MBE laws."

Last, appellant argues that COMAR 21.11.03.14 does not leave bidders who have been rejected by agencies without a remedy. Rather, appellant argues, "[a]gency actions implementing the MBE laws, like all government actions, are subject to review by a court to determine if they are arbitrary, capricious or illegal, via a request for a writ of administrative mandamus." In other words, contractors aggrieved by an agency's MBE-related decision have a sufficient remedy in the circuit courts.[3]

Appellant also makes a separate argument on appeal: the case is moot because the contract that appellee sought was awarded to another contractor, and the work has already been completed. Appellee counters that the contract is not moot because appellee has a statutory right to recover its reasonable costs of filing and pursuing the bid protest in the event that the protest is sustained. Alternatively, appellee argues

---

3. Appellant references, in a footnote, *David A. Bramble, Inc. v. Maryland Department of General Services*, No. 51, Sept. Term 2009, an unreported opinion out of this Court in which we stated that COMAR 21.11.03.14 validly denies the MSBCA jurisdiction over MBE matters. As both parties in the case before us recognize, *Bramble* has no precedential value because it was unreported. Moreover, both parties in *Bramble* espoused a common position that the Board lacked jurisdiction over MBE-related bid protests pursuant to COMAR 21.11.03.14. Neither party in *Bramble* argued, either in lower court or on appeal, that the Board had jurisdiction. Thus, the *ultra vires* argument made in the case *sub judice* was not made in *Bramble*.

that this case falls under exceptions to the mootness doctrine. Specifically, appellee contends (1) that there is an urgent need to establish a rule of future conduct in a matter of important public concern; and (2) that the improper action is capable of being repeated while evading judicial review.

*3. Mootness*

■ We need not address appellant's argument that the case is not moot because of a claim for costs because we agree with appellee that, even if the case were otherwise moot, it falls under an important exception to the mootness doctrine.

"A case is moot when there is no longer any existing controversy between the parties at the time that the case is before the court, or when the court can no longer fashion an effective remedy." *Green v. Nassif,* 401 Md. 649, 654, 934 A.2d 22 (2007) (citing *In re Kaela C.,* 394 Md. 432, 452, 906 A.2d 915 (2006)). Nevertheless, "[a] limited exception to the mootness doctrine will be found, even if no controversy exists at the moment of review, if the controversy between the parties is capable of repetition, yet evading review." *Hamot v. Telos Corp.,* 185 Md.App. 352, 364, 970 A.2d 942 (2009) (citing *State v. Parker,* 334 Md. 576, 584, 640 A.2d 1104 (1994)).

We hold that this is an important problem which, absent resolution, will reoccur and may evade judicial review. Appellee claims that it will continue to submit bids on future University procurements. It is thus reasonable to expect that appellee will be involved in other MBE-related bid protests, which will be appealed to the Board. Perhaps more important, however, repetition and evasion of this issue will occur in the context of other bidders and other State agencies involved in MBE-related bid disputes. Between 2004 and 2008, the Board dismissed three MBE-related bid protest appeals (other than the one at issue here) for lack of jurisdiction under COMAR 21.11.03.14. *See Knott Constr. Co.,* 6 MSBCA ¶ 555 (2004); *Snake River Land Co., Inc.,* MSBCA 2539, —— MSBCA ¶ —— (Sept. 12, 2006); *Waynesboro Constr. Co.,*

*Inc.,* 2600 & 2605, —— MSBCA ¶ —— (Nov. 7, 2008). Accordingly, we shall not dismiss this appeal as moot.

### 4. *Validity of COMAR 21.11.03.14*

■ We hold that the plain language of F.P. §§ 15–215 and 15–217 invalidates COMAR 21.11.03.14. The statutory provisions grant contractors aggrieved by agency MBE decisions the right to submit bid protests; the regulation prohibits them from doing so. The statutory provisions trump the regulation. *See Univ. of Md. v. MFE,* 345 Md. 86, 104, 691 A.2d 676 (1997) (stating that BPW may not "adopt regulations that would be inconsistent with the procurement statute or the legislative intent behind it"). The regulation is thus *ultra vires.*

Appellant's arguments to the contrary are either irrelevant or meritless. Appellant's first point of contention (concerning the preamble to the MBE law) is unpersuasive. The preamble to *the MBE law* is of little consequence in interpreting the language in Titles 14 and 15 of *the State Finance & Procurement Article* as that language relates to the issue in question. The MBE law and the State Finance & Procurement Article are two separate statutes. Under F.P. §§ 15–215 and 15–217, bidders have the unlimited right to file a bid protest concerning the determination of the successful bidder. That right could not be compromised by the preamble to the separate MBE law. We note further that, in considering the preamble to the MBE law, the fact that the General Assembly retained oversight is of no moment. The General Assembly, when enacting legislation with a policy objective frequently retains oversight in order to monitor whether its policy determinations are being implemented and with what effect. By retaining oversight, the General Assembly does not purport to effectively establish itself as an administrative body to decide specific disputes.

Equally unpersuasive is appellant's second argument—that the General Assembly amended the MBE law in 2006 *after* the MSBCA's 2004 *Knott* decision applying COMAR 21.11.03.14, without addressing the issue in this case, thus suggesting that

the regulation conforms to the legislative intent of the MBE statute. In re-enacting the statute, the General Assembly was not reviewing specific contracts or issues; it was reviewing policy objectives and determining whether to keep the MBE program in existence or to modify it. Moreover, the fact of renewal without express attention to the issue in this case does not override the relevant statutory language. If we conclude, as we have, that the language of F.P. §§ 15–215 and 15–217 invalidates the regulation, the General Assembly's re-enactment of the MBE law does not trump that language.

We turn next to appellant's third argument—that the regulation is not inconsistent with F.P. §§ 15–215 and 15–217 because the General Assembly could give the Board jurisdiction to hear Title 15 disputes but not give it jurisdiction to hear Title 14 disputes. The problem with that argument is that, unless expressly exempted, Title 15 covers *all* procurement contracts. Thus, Title 15 gives the Board jurisdiction to hear *all* disputes, including MBE disputes, and Title 14 does not purport to take that jurisdiction away.

Appellant's last argument, that contractors aggrieved by an agency's MBE-related decision have sufficient remedy in the circuit courts via administrative mandamus, is beside the point. The question in this case is whether aggrieved MBE bidders have a statutory right to submit bid protests in the administrative context, and the answer is yes.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**